UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:15-CV-519 JD |
| EARL D. MILLER; 5 STAR COMMERCIAL, LLC; and 5 STAR CAPITAL FUND, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

**TEMPORARY RESTRAINING ORDER
AND ORDER FOR OTHER ANCILLARY RELIEF**

This matter is before the Court on an *ex parte* motion for a temporary restraining order filed by the United States Securities and Exchange Commission. [DE 3]. The SEC alleges in this action that the defendants, Earl D. Miller; 5 Star Commercial, LLC; and 5 Star Capital Fund, LLC, have engaged in securities fraud. It filed a three-count complaint in which it asserts claims for violations of the Exchange Act and the Securities Act, and which seeks permanent injunctive relief, disgorgement, and civil penalties. [DE 1]. In its present motion, the SEC seeks various temporary injunctive relief, including an injunction against further violations of securities laws, a freeze of the defendant's assets, a document preservation order, and an accounting and expedited discovery in preparation for a preliminary injunction hearing. It seeks this relief *ex parte* in order to decrease the risk that the defendants will hide or dissipate any remaining assets that could be used to compensate the alleged victims or to satisfy any civil penalties. For the following reasons, the motion is granted in part and denied in part.

## I. BACKGOUND

Defendant Earl D. Miller entered the field of private investment management in 2008, and opened a series of entities that took in money from private investors and then used it to make investment in real estate. In July 2014, Miller bought out his business partner and assumed sole control of those entities, including 5 Star Commercial, LLC, which he had managed since 2012. In February 2015, Miller created a new entity named 5 Star Capital Fund, LLC. From July 29, 2014 to date, Miller and the two entities have raised at least $3.9 million from at least 70 investors in 6 states, often promising yearly returns of 8% to 12% on the promissory notes the investors would receive. In a Private Placement Memoranda given by 5 Star Commercial to potential investors, 5 Star Commercial represented that it would be managed by Miller, who would not receive a salary "or wages of any type," and that investments would be used to purchase real estate. In reality, Miller paid himself substantial sums from 5 Star Commercial's accounts, including transfers of $8,000 around the beginning of each month from October 2014 through July 2015, plus other transfers, which amounted to $365,435 in total. In addition, rather than use the funds only for investment and related purposes, as represented, Miller used $645,815.67 in funds from 5 Star Commercial's accounts to make payments to his former business partner, whom he had bought out. In addition, even though the PPM represented that investments would be made in real estate, 5 Star Commercial invested nearly $400,000 in small companies that purportedly manufacture and sell "green products."

5 Star Capital, meanwhile, specifically stated in its PPM that it would make investments in green products. However, 5 Star Capital also represented in the PPM that it "owns patents on many of these products and will distribute them through large chain stores such as Bed Bath and Beyond." [DE 3-12]. It also identified certain risks and stated that it "will do its best to manage these risks." *Id.* However, 5 Star Capital has never owned any patents for any products. Further,

it invested approximately $1.15 million into several fledgling enterprises with little to no track record, apparently based on nothing more than a one-and-one-half page marketing document. Furthermore, 5 Star Capital failed to even memorialize all of the investments, and for over $400,000 of the investments, did not even receive any documentation evidencing, or governing the terms of, the investments.

5 Star Capital's investments apparently fared poorly, as some never generated any revenue, and the rest have stopped generating any returns at all. In July 2015, the Defendants stopped making interest payments as required under the investors' promissory notes. The SEC began investigating the Defendants and issued a subpoena to Miller to testify under oath. However, Miller asserted his Fifth Amendment right against self-incrimination, and has not cooperated with the SEC's investigation. Accordingly, the SEC filed this action asserting claims against each Defendant for securities fraud. At the same time it filed the complaint, the SEC also filed the present motion for an *ex parte* restraining order. This Court has jurisdiction over this action pursuant to 15 U.S.C. §§ 77v(a) and 78aa(a), the Court has personal jurisdiction over each of the defendants, and venue is proper in this district because many of the acts at issue in this action are alleged to have occurred in this district.

## II.  ANALYSIS

Pursuant to 15 U.S.C. § 78u(d)(5), "In any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors." Likewise, "upon a proper showing," a court may enter a permanent or temporary injunction or restraining order enjoining acts or practices that violate the securities laws. *Id.* § 78u(d)(1), § 77t(b). These provisions also "allow the granting of 'any form of ancillary relief

where necessary and proper to effectuate the purposes of the statutory scheme.'" *SEC v. Cherif*, 933 F.2d 403, 413 (7th Cir. 1991) (quoting *SEC v. Materia*, 745 F.2d 197, 200 (2d Cir. 1984)).

In the Seventh Circuit, the standard for determining whether a temporary restraining order is appropriate is analogous to the standard applicable when determining whether preliminary injunctive relief is appropriate. *See YourNetDating, Inc. v. Mitchell*, 88 F. Supp. 2d 870, 871 (N.D. Ill. 2000). The party seeking the temporary restraining order bears the burden of showing that it is "reasonably likely to succeed on the merits[,] is suffering irreparable harm that outweighs any harm the nonmoving party will suffer if the injunction is granted, there is no adequate remedy at law, and an injunction would not harm the public interest." *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 619 (7th Cir. 2004) (stating the standards for preliminary injunction); *Cherif*, 933 F.2d at 407–08 (applying this same standard to a request for a preliminary injunction by the SEC). If a plaintiff meets this threshold, the court "weighs the factors against one another in a sliding scale analysis . . . to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied." *Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). The SEC argues that it need not show anything more than a likelihood of success of proving current violations and a risk of repetition, citing *SEC v. Cavanagh*, 155 F.3d 129, 132 (2d Cir. 1998), but it appears that the Seventh Circuit has yet to accept that standard, *Cherif*, 933 F.2d at 408 n.1 (acknowledging the Second Circuit's lowered standard for injunctions requested by the SEC, but declining to decide whether such an exception

is proper). The Court need not decide that issue, though, since a temporary restraining order would be warranted under either standard.[1]

First, the SEC has shown a sufficient likelihood of success on the merits of establishing that the Defendants have violated and may continue to violate various anti-fraud provisions of federal securities laws, including that they made material misrepresentations to investors, in violation of Securities Act Section 17(a)(2), Exchange Act Section 10(b) and Exchange Act Rule 10b-5(b); and that they engaged in a fraudulent scheme, in violation of Securities Act Sections 17(a)(1) and (3), Exchange Act Section 10(b), and Exchange Act Rules 10b-5(a) and (c). At the outset, it appears that the investments in question do constitute "securities," as defined under federal law. The PPMs repeatedly and expressly refer to the investments as securities, and the investments satisfy each of the factors for being considered securities. *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990) ("Congress therefore did not attempt precisely to cabin the scope of the Securities Acts. Rather, it enacted a definition of 'security' sufficiently broad to encompass virtually any instrument that might be sold as an investment.").

To establish a violation of Securities Act Section 17(a) or Exchange Act Section 10(b) and Rule 10b-5(b), the SEC must show that the Defendants (1) made a false statement or omission, (2) of material fact, (3) with scienter, meaning a mental state embracing intent to deceive, manipulate, or defraud (or, for Section 17(a)(2), negligence), (4) in connection with the purchase or sale (or, for Section 17(a), the offer or sale) of a security. *McConville v. SEC*, 465 F.3d 780, 786 (7th Cir. 2006); 15 U.S.C. § 77q(a)(2); 15 U.S.C. § 78j(b). The evidence submitted by the SEC supports its allegations that the Defendants made material false statements. The PPM

---

[1] And since the SEC has requested a temporary restraining order without notice, it has to show irreparable harm anyway. Fed. R. Civ. P. 65(b)(1), (2).

for 5 Star Commercial stated that Miller would not be "paid a salary or wages of any type," but the evidence shows that Miller paid himself $365,435 from 5 Star Commercial's accounts. 5 Star Commercial's PPM likewise said that investor funds would be used to invest in real estate, but instead, Miller took $645,816 out of 5 Star Commercial's accounts to pay off a personal debt to his former business partner, and also invested nearly $400,000 in "green products" companies unrelated to real estate investments. As to 5 Star Capital, its PPM represented that it owned patents on green products it was investing in, but it has never owned any patents on any products. It also represented that it would manage its risks, but Miller apparently invested hundreds of thousands of dollars into companies based on a one-and-one-half page brochure, and also failed to receive any documentation for hundreds of thousands of dollars of investments into those entities.[2] Such misrepresentations can easily be considered material to the investments. As to scienter, Miller had sole control over and management of both entities during these time frames, and the Defendants were engaging in conduct that directly contradicted the above representations even as they continued to solicit and accept investments using those representations, which permits an inference of intent.

Further, the SEC has also shown a likelihood of success of showing violations of Securities Act Sections 17(a)(1) and (3), Exchange Act Section 10(b), and Exchange Act Rule 10b-5(a) and 10b-5(c), which prohibit schemes to defraud in connection with the offer, purchase, or sale of securities. A "scheme to defraud" is "merely a plan or means to obtain something of value by trick or deceit." *SEC v. Kimmes*, 799 F. Supp. 852, 858 (N.D. Ill. 1992). The above

---

[2] The SEC further alleges that Miller told at least two 5 Star Capital investors that the fund would invest in real estate, though the affidavits do not support that assertion—they merely state that the investors' understanding was that their investments would be used to purchase real estate, without indicating how the investors came to be of that understanding. [DE 3-34; 3-35].

6

facts adequately show the existence of a scheme to defraud, including through the multiple and repeated misrepresentations, thus showing a likelihood of success on these claims.

The SEC has similarly shown a reasonable likelihood that the Defendants, if not enjoined, will again engage in the illegal conduct. As summarized by the Seventh Circuit in *Suter*:

> In predicting the likelihood of future violations, a court must assess the totality of the circumstances surrounding the defendant and his violation, including such factors as the gravity of the harm caused by the offense; the extent of the defendant's participation and his degree of scienter; the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve him in such transactions; the defendant's recognition of his own culpability; and the sincerity of his assurances against future violations.

*SEC v. Suter*, 732 F.2d 1294, 1301 (7th Cir. 1984). Here, the Defendants have directly engaged in repeated misconduct and have misdirected investment funds to their own benefit, and they have not accepted responsibility for their conduct or given any assurances that they would not engage in similar conduct in the future, which shows a reasonable likelihood of future violations.

As to the equitable factors, the Court also finds that there is a likelihood of irreparable harm for which there is no adequate remedy at law if the Court were not to enter a temporary restraining order. The Defendants' conduct, both in soliciting investments and then in dissipating and improperly applying investment funds, has likely jeopardized and depleted the investments of dozens of people, and that conduct may continue if the Defendants not enjoined, which would further jeopardize those funds. Furthermore, absent a temporary restraining order at this point, the Defendants would have the opportunity to hide or dissipate any remaining assets, which would put any recovery from this action at risk and prevent the investors from recouping any losses. This irreparable harm outweighs any harm that the Defendants would suffer if the temporary restraining order is granted. While freezing the Defendants' assets and enjoining them from soliciting, accepting, or depositing any new funds may impose some hardship, that hardship

does not outweigh the hardship that could come to the SEC and the investors if any available assets were lost in the meantime. Finally, granting a temporary restraining order will not harm the public interest, which is furthered by the enforcement of securities laws and the preservation of investment funds against fraudulent conduct.

Turning to the specific relief that is appropriate under these circumstances, the SEC first requests that the Defendants be enjoined "from violating the securities laws, including Section 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder." However, the Seventh Circuit disfavors injunctions that do little more than require parties to "obey the law." *E.g.*, *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 841 (7th Cir. 2013). Moreover, the SEC has not shown why an injunction that is so broad is necessary at this early stage of litigation, before the Defendants have even been given notice of the request and an opportunity to respond, or what harm would come during the short duration of this order if this particular injunction were not entered. That is particularly so given the other relief the Court is granting, which would make it difficult for the Defendants to engage in any such activities, anyway. Accordingly, the Court declines to impose that injunction. The SEC also requests that the Defendants be enjoined from soliciting, accepting, or depositing any monies from actual or prospective investors. Because that request is specific, tied to the facts of the case, and may prevent additional harm from occurring prior to a preliminary injunction hearing by preventing additional investor funds from being placed at risk, the Court finds that it is appropriate and grants that request.

The SEC further requests that the Defendants' assets be frozen, and that the Defendants be ordered to preserve documents relating to this matter. The Court finds that these requests are justified in order to preserve the status quo pending a preliminary injunction hearing, and to

ensure that any assets are not hidden or dissipated. The SEC alleges, and the evidence indicates, that the Defendants have committed acts of dishonesty, that they have improperly diverted large sums of money for their own benefit, and that they have made large investments without receiving any corresponding documentation in return. The Defendants also engaged in some of this conduct even after being investigated by and entering a consent decree with the Indiana Securities Commissioner. This conduct presents a risk that the Defendants will attempt to hide or will otherwise dissipate their assets, which justifies freezing their assets at least until a preliminary injunction hearing can be held. Likewise, an order that the Defendants preserve any documents is appropriate to ensure that all pertinent materials remain available for potential use in this case.

As to the remaining requests, such as for an accounting, for expedited discovery, and for the setting of a preliminary injunction hearing, the Court believes that those are better addressed to the discretion of the judge that will be handling the case moving forward. Pursuant to General Order 2015-7 of the Northern District of Indiana, when a motion for a temporary restraining order is filed at the same time as the complaint, the case must be temporarily assigned to a district judge who regularly sits in the division in which the complaint was filed. Once the initial temporary restraining order has been ruled on, the case must be randomly reassigned according to the district's standard case-assignment procedures. Pursuant to that General Order, this case was temporarily assigned to the undersigned because the case was filed in South Bend. Once this order is entered, the case will be randomly reassigned, and the district judge and the assigned magistrate judge can enter appropriate orders pertaining to discovery, the setting of a preliminary injunction hearing, and the other ancillary requests. Moreover, the SEC has not indicated why those remaining requests need to be ruled on *ex parte*, before the Defendants have even been

9

given notice and a chance to respond. Therefore, the Court denies the remaining requests with leave to renew.

As to the SEC's request to grant this motion *ex parte*, a court may only issue a temporary restraining order without prior notice to the adverse party if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and the movant's attorney certifies why notice should not be required. Fed. R. Civ. P. 65(b)(1). Here, counsel for the SEC has submitted the requisite certification, in which he states that an *ex parte* order "is warranted to increase the likelihood of freezing, and ultimately recovering, any investor money or other assets in Defendants' possession, custody or control. If Defendants are given advance notice that the SEC is seeking emergency relief, including an asset freeze, they may dissipate or hide any remaining assets." [DE 3-39]. For many of the same reasons that the Court found that an asset freeze is warranted, the Court agrees that the standard for proceeding *ex parte* has been met; if given notice of this motion, the Defendants would have an opportunity to hide or dissipate assets. Accordingly, pursuant to Rule 65(b)(1)(A) and (b)(2), the Court finds that immediate and irreparable injury, loss, or damage will result to the SEC before the Defendants could be heard in opposition. Finally, pursuant to Rule 65(c) ("The United States, its officers, and its agencies are not required to give security.") and 15 U.S.C. §§ 77t(b), 78u(d)(1), no bond shall be required from the SEC.

### III.  CONCLUSION

The motion for a temporary restraining order [DE 3] is GRANTED in part and DENIED in part. Pursuant to Rule 65(b), the Court enters the following Temporary Restraining Order:

1. **ORDER PROHIBITING DEFENDANTS FROM SOLICITING INVESTORS**

Earl D. Miller; 5 Star Commercial, LLC; and 5 Star Capital Fund, LLC ("Defendants") and each of their agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, including electronic mail or overnight delivery service, are hereby prohibited from soliciting, accepting, or depositing any monies from actual or prospective investors while this Order is in effect.

**2.     ORDER FREEZING ASSETS**

A.     Defendants and each of their officers, agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, including electronic mail or overnight delivery service, shall hold and retain funds and other assets of Defendants and presently held by them, for their direct or indirect benefit, under their direct or indirect control or over which they exercise actual or apparent investment or other authority (including assets held in the name of or for the benefit of Defendants), in whatever form such assets may presently exist and wherever located, and shall prevent any withdrawal, sale, payment (including, but not limited to, any charges on any credit card or draws on any other credit arrangement), transfer, dissipation, assignment, pledge, alienation, encumbrance, disposal, or diminution in value of any such funds or other assets, which are hereby frozen, including, but not limited to, such funds held in the following accounts:

| Institution | Account Number | Account Name |
|---|---|---|
| Wells Fargo Bank, N.A. | xxxx3005 | 5 Star Commercial, LLC |
| Wells Fargo Bank, N.A. | xxxx3898 | 5 Star Commercial, LLC |
| Wells Fargo Bank, N.A. | xxxx4766 | 5 Star Commercial, LLC |
| Wells Fargo Bank, N.A. | xxxx2485 | 5 Star Capital Fund, LLC |
| Interra Credit Union | xxxx4474 | 5 Star Commercial LLC |

| Interra Credit Union | xxxx5539 | Earl D. Miller |
| Chase Bank USA | xxxx7470 | 5 Star Commercial, LLC |

    B.  All banks, brokerage and other financial institutions and other persons or entities which receive actual notice of this Order by personal service or otherwise, including electronic mail or overnight delivery service, holding any funds or other assets in the name, for the direct or indirect benefit, or under the direct or indirect control of Defendants or over which Defendants exercise actual or apparent investment or other authority (including assets in the name of Defendants), in whatever form such assets may presently exist and wherever located, including but not limited to all such funds held in the accounts listed in Paragraph A above, shall hold and retain within their control and prohibit the withdrawal, removal, sale, payment (including, but not limited to, any charges on any credit card or draws on any other credit arrangement), transfer, dissipation, assignment, pledge, alienation, encumbrance, diminution in value, or other disposal of any such funds or other assets; and that such funds and assets are hereby frozen.

**3.  ORDER REQUIRING DEFENDANTS TO PRESERVE DOCUMENTS**

  Defendants and each of their officers, agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, including electronic mail or overnight delivery service, are hereby restrained from destroying, mutilating, concealing, altering, disposing, or transferring custody of any items, including but not limited to any books, records, documents, correspondence, contracts, agreements, assignments, obligations, tape recordings, computer media or other property relating to defendants or the misconduct described in the Complaint.

This Temporary Restraining Order shall continue in effect for fourteen (14) days from the time of entry of this Order or until entry of an order on a preliminary injunction, whichever occurs first. The SEC shall not be required to post any bond. The Court DENIES the remaining requests, with leave to renew. The Clerk is DIRECTED to file and maintain this Order *ex parte* until it has been served on the Defendants or until otherwise ordered, though the SEC is free to serve it upon the Defendants and otherwise disclose it. Finally, the Clerk is DIRECTED to randomly reassign this case, pursuant to General Order 2015-7.

SO ORDERED.

ENTERED:  November 6, 2015 at 12:30pm (EDT)


/s/ JON E. DEGUILIO
Judge
United States District Court