UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

|  |  |  |  |
|---|---|---|---|
| | ) | | |
| IN RE: | ) | CHAPTER 11 | |
| | ) | | |
| 5 STAR INVESTMENT GROUP, LLC | ) | CASE NO.: | 16-30078 |
| 5 STAR PORTLAND HOLDINGS, LLC | ) | | 16-30079 |
| 5 STAR INVESTMENT GROUP V, LLC | ) | | 16-30080 |
| 5 STAR COMMERCIAL, LLC | ) | | 16-30081 |
| 5 STAR INVESTMENT GROUP VII, LLC | ) | | 16-30082 |
| 5 STAR HOLDINGS, LLC | ) | | 16-30083 |
| 5 STAR INVESTMENT GROUP III, LLC | ) | | 16-30084 |
| 5 STAR INDIANA HOLDINGS, LLC | ) | | 16-30085 |
| 5 STAR INVESTMENT GROUP II, LLC | ) | | 16-30086 |
| 5 STAR INVESTMENT GROUP IV, LLC | ) | | 16-30087 |
| 5 STAR CAPITAL FUND, LLC | ) | | 16-30088 |
| | ) | | |
| Debtors | ) | | |

**UNITED STATES TRUSTEE'S EMERGENCY MOTION
FOR AN ORDER DIRECTING THE APPOINTMENT OF A TRUSTEE OR,
IN THE ALTERNATIVE, CONVERSION TO CHAPTER 7,
AND REQUEST FOR AN EXPEDITED HEARING ON THE MOTION**

Nancy J. Gargula, the United States Trustee for Region 10 ("U.S. Trustee"), pursuant to

11 U.S.C. § 1104(a) and § 1112(b)(1), respectfully submits this *Emergency Motion for an Order*

*Directing The Appointment of a Trustee or, In the Alternative, Conversion to Chapter 7, and*

*Request for an Expedited Hearing on the Motion* (the "Motion"), and in support thereof, states:

**SUMMARY OF ARGUMENT**

There is an emergent need for the expedited appointment of a Chapter 11 trustee in each

of the above-captioned cases (referred to hereafter collectively as the "Debtors").[1]  First, under

---

[1] The Debtors are 5 Star Capital Fund, LLC, Case No. 16-30088, 5 Star Commercial LLC, Case No. 16-30081, 5 Star Holdings, LLC, Case No. 16-30083, 5 Star Indiana Holdings, LLC, Case No. 16-30085, 5 Star Investment Group II, LLC, Case No. 16-30086, 5 Star Investment Group III, LLC, Case No. 16-30084, 5 Star Investment Group IV, LLC, Case No. 16-30087, 5 Star Investment Group V LLC, Case No. 16-30080, 5 Star Investment Group VII, LLC, Case No. 16-30082, 5 Star Investment Group, LLC, Case No. 16-30078, and 5 Star Portland Holdings LLC, Case No. 16-30079 (the "Debtors" or the "5 Star Entities").

§ 1104(a)(1), cause exists to appoint a Chapter 11 trustee due to the alleged prepetition

misconduct of the Debtors' sole owner and managing member, Earl D. Miller ("Mr. Miller").

The Securities and Exchange Commission ("SEC") has filed a motion seeking appointment of a

Chapter 11 trustee in each of the Debtors' cases as well.[2]  The SEC Trustee Motions and the

pleadings, exhibits and orders filed in *SEC v. Earl D. Miller, 5 Star Commercial LLC and 5 Star*

*Capital Fund, LLC,*[3] set forth the detailed factual basis supporting the SEC's claim of fraud,

dishonesty and gross mismanagement of the affairs of 5 Star Commercial LLC and the Debtors,

which resulted in the entry of a temporary restraining order and preliminary injunction against

Earl D. Miller, 5 Star Commercial, LLC and 5 Star Capital Fund, LLC.  Among other

misconduct, Mr. Miller allegedly (a) made material misrepresentations to investors of the

Debtors, (b) transferred in excess of one million dollars in Debtors' funds to himself and his

former partner Matthew Gingerich ("Mr. Gingerich"), (c) caused 5 Star Commercial, LLC and 5

Star Capital, LLC to transfer/invest $1.15 million as "loans" in "green product" companies,

while misrepresenting Debtors' ownership of "green product" patents to investors, and (d)

asserted the Fifth Amendment privilege rather than comply with the SEC's investigative

subpoena.

---

[2] *See* the SEC's *Motion (*or *Amended Motion) of Securities and Exchange Commission for Appointment of a Chapter 11 Trustee, or, Alternatively to Convert the Case to Chapter 7* ("SEC Trustee Motions") filed in each of the Debtors' Cases.  The U.S. Trustee requests the Court to take judicial notice of the pleadings and exhibits filed therein.  To avoid excess paper and filings, the SEC Trustee Motions are not attached to this Motion in their entirety; the SEC Trustee Motions and exhibits are incorporated herein by reference.

[3] *SEC v. Earl D. Miller, 5 Star Commercial LLC and 5 Star Capital Fund, LLC,* Civil Action No. 15-cv-00519 (November 5, 2015) (N.D.Ind.) ("SEC Enforcement Action").  The SEC has filed with this Court copies of the pleadings, exhibits, temporary restraining order and preliminary injunction issued in the SEC Enforcement Action. *See* Docket No. 9 (*Notice of Complaint And Orders in the U.S. District Court for the N.D. of Indiana Filed by Angela Dodd United States Securities And Exchange Commission*) in Case No. 16-30081.  The U.S. Trustee requests the Court to take judicial notice of the pleadings and exhibits filed therein.  To avoid excess paper and filings, the Complaint, exhibits and Orders are not attached to this Motion in their entirety; the Complaint, exhibits and orders are incorporated herein by reference.

Second, under § 1104(a)(2), immediate appointment of an independent trustee is in the best interests of creditors, investors and all parties in interest because the Debtors lack an appropriate fiduciary to manage their affairs.  Through a preliminary investigation of this matter, the U.S. Trustee has learned that Mr. Miller may have left town, that the Debtors' prepetition restructuring and asset recovery agent, Global Impact Companies, LLC ("Global Impact"), does not appear to have substantial credentials or prior experience with restructuring and turnaround management, and that Global Impact's asset recovery engagement with the Debtors is a joint engagement with Mr. Miller individually.  Global Impact's ties to Mr. Miller preclude the firm from serving the bankruptcy estates in an independent and useful way.  Moreover, although the Debtors' assets include seventy residential rental units in Northern Indiana, the Debtors had no insurance on the petition date and have not filed any motions under § 366 to ensure the continued provision of utilities service in these cases.

Accordingly, the U.S. Trustee respectfully submits that appointment of a Chapter 11 trustee is justified in each of the Debtors' cases.  Alternatively, pursuant to §1112(b)(1), the U.S. Trustee requests that this Court convert each of the Debtors' cases to Chapter 7 for cause, including gross mismanagement of the estates under § 1112(b)(4)(B) and/or the failure to maintain appropriate insurance that poses a risk to the estates or to the public under § 1112(b)(4)(C).  The U.S. Trustee respectfully requests that this Motion be set for an expedited hearing based on its emergency nature.

## JURISDICTION

This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.  Venue in this District is proper under 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(G).  Relief is requested under 11 U.S.C. § 105(a), § 1104, and/or § 1112.

Under 28 U.S.C. § 586 and 11 U.S.C. § 307, Congress charged the U.S. Trustee with broad responsibilities in Chapter 11 cases and the standing to be heard on any issue in any case or proceeding. *See also United States Trustee v. Columbia Gas Sys., Inc.* (*In re Columbia Gas Sys., Inc.*), 33 F.3d 294, 295-96 (3d Cir. 1994). Where there is "cause" to remove the debtor's management, the U.S. Trustee may seek the appointment of a chapter 11 trustee. *In re Marvel Entm't Group, Inc.,* 140 F.3d 463, 473 (3rd Cir. 1998); 11 U.S.C. §1104.[4]

## BACKGROUND

On January 29, 2016, ("Petition Date"), the above-captioned Debtors filed voluntary cases under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* An official committee has not yet been appointed in any of Debtors' cases.

### A.    Alleged Material Misrepresentations to 5 Star Commercial LLC Investor/Lenders

Commencing in 2008, Mr. Miller began recruiting investors to lend money to a number of private investment entities to generate a return by investing in the purchase and rehabilitation of residential real estate.  In 2012, Mr. Miller formed 5 Star Commercial LLC and obtained funding from investors through oral representations and written marketing materials, including a Private Placement Memorandum ("PPM").  *See* SEC Trustee Motions at 3-4.  Mr. Miller targeted unsophisticated investors from the Amish community, raising $2.28 million for 5 Star Commercial LLC and $1.62 million for 5 Star Capital Fund, LLC between July 2014 and the present. In some cases, investors gave Mr. Miller their retirement funds or a majority of their life

---

[4] 11 U.S.C. § 1104(e) provides that the United States Trustee "shall move for the appointment of a trustee under subsection (a) if there are reasonable grounds to suspect that current members of the governing body of the debtor, the debtor's chief executive office, or members of the governing body who selected the debtor's chief executive or chief financial officer, participated in actual fraud, dishonesty, or criminal conduct in the management of the debtor or the debtor's public financial reporting." Thus, given the SEC's allegations that the Debtors' sole member violated federal securities laws using at least two of the Debtors as vehicles for fraud and the entry of a TRO and preliminary injunction by the Northern District of Indiana in the SEC Enforcement Action, the U.S. Trustee has a statutory duty to bring this Motion.

savings in return for promissory notes with above-market fixed-rate returns ranging from 8-12%

yearly, with monthly payments promised.  *See* SEC Trustee Motions at 4 - 5.  In July 2014, Mr.

Miller bought out his former business partner, Mr. Gingerich, and assumed sole control of those

entities, including 5 Star Commercial, LLC, which Mr. Miller had managed since 2012.

Mr. Miller assured investors that he would not be paid for his services in managing the

funds and that the monies invested would be used exclusively for real estate investment.  *Id.*

Upon information and belief, Mr. Miller set up multiple entities to purchase real estate with

investor funds, including 5 Star Investment Group V, LLC, 5 Star Investment Group II, LLC,  5

Star Investment Group III, LLC, and 5 Star Investment Group IV, LLC.  Other entities were also

used to obtain investor funds or to hold investor funds, including 5 Star Indiana Holdings, LLC,

5 Star Holdings, LLC, and 5 Star Investment Group IV, LLC.

However, instead of adhering to the promises made to investors in the PPM, as described

below, the SEC alleges that Mr. Miller transferred over one million dollars in the aggregate to

himself and to Mr. Gingerich, thus allegedly misusing the investors' funds and draining the

Debtors of capital needed to pay investors' returns.  *See* SEC Trustee Motions at 3-4. Despite the

assurance that investor funds would only be used for real estate investment, Mr. Miller allegedly

transferred over $391,000 of 5 Star Commercial's funds to highly speculative, fledgling

companies that purportedly manufactured "green products," as further described below. *Id.*

### B.    Alleged Fraudulent Transfers of Debtor Funds to Mr. Miller and Mr. Gingerich

Notwithstanding Mr. Miller's promises to investors in the 5 Star Commercial PPM that

he would not be paid a salary or wages of any type, between July 29, 2014, and July 1, 2015, the

SEC alleges that Mr. Miller transferred $365,435.00 from 5 Star Commercial's accounts.  *See*

SEC Enforcement Action at 16 and "Helpingstine Declaration,"[5] Exhibit D ("Miller Transfers").[6] Notwithstanding Mr. Miller's promises to investors in the 5 Star Commercial PPM that 5 Star Commercial would invest its funds in real estate and to pay for related costs, between July 29, 2014, and June 26, 2015, Mr. Miller allegedly transferred $645,816.00 from 5 Star Commercial to pay off Mr. Gingerich. *See* Exhibit E to Helpingstine Declaration ("Gingerich Transfers").[7]

### C.   The Failed "Green Product" Investments and Alleged Misrepresentations to 5 Star Capital Investor/Lenders

Supporting the SEC's claims of gross mismanagement and further alleged fraud, Mr. Miller caused 5 Star Commercial, LLC and 5 Star Capital, LLC to transfer/invest in excess of one million dollars as "loans" in start-up "green product" companies, while allegedly misrepresenting the Debtors' ownership of "green product" patents to investors. *See* SEC Trustee Motions ¶¶ 7-12. The SEC further alleges that, of the money transferred to the "green products" entities, $391,000 was transferred between February and June 2015 from 5 Star Commercial funds that 5 Star Commercial investors were assured would only be used for investment in real estate. *Id. See also* Helpingstone Declaration, Exhibit Q ("Toth/Foraker Transfers").[8] Similarly, between March and July 2015, $1.15 million was transferred from 5 Star Capital to various of the green product entities. *Id.* The majority of the "green products" investments failed almost immediately, while other of the "green products" companies made payments of $3,500 per month only from March through July 2015 prior to defaulting on the 5 Star loans. SEC Trustee

---

[5] A copy of the Declaration of Delia L. Helpingstine in Support of Plaintiff Securities and Exchange Commission's Ex Parte Motion for Temporary Restraining Order, Asset Freeze and Ancillary Relief ("Helpingstine Declaration), filed in the SEC Enforcement Action, is attached hereto and incorporated herein as **Exhibit A.**
[6] The Miller Transfers is attached hereto and incorporated herein as **Exhibit B.**
[7] The Gingerich Transfers is attached hereto and incorporated herein as **Exhibit C.**
[8] A copy of the Toth/Foraker Transfers is attached hereto and incorporated herein as **Exhibit D.**

Motions at 5.  As a consequence, 5 Star Capital ceased paying its investor lenders on their

promissory notes. *Id.*

### D.    Mr. Miller Asserts the Fifth Amendment in the SEC Investigation

As set forth in the SEC Trustee Motions, the SEC issued an investigative subpoena to Mr.

Miller in September of 2015, requiring him to appear and provide testimony under oath to the

SEC regarding the funds he raised from investors for 5 Star Commercial LLC and 5 Star Capital

LLC.  *Id.* at 6.  According to the SEC, Mr. Miller failed to appear and instead submitted a

declaration asserting his Fifth Amendment privilege against self-incrimination as the basis for

refusing to answer questions regarding the 5 Star entities, representations to investors, the PPMs,

and the misappropriation, transfers and misuse of investor funds.  *Id.*

### E.    A TRO and Preliminary Injunction are Issued
### in the SEC Enforcement Action

On November 5, 2015, the SEC filed the SEC Enforcement Action in the Northern

District of Indiana, alleging that Mr. Miller, 5 Star Commercial and 5 Star Capital committed

securities fraud in violation of § 10(b) of the Securities Exchange Act of 1934 and § 17(a) of the

Securities Act of 1933.   The Court entered a Temporary Restraining Order ("TRO") on

November 6, 2015,[9] finding, *inter alia:*

> That the SEC has made a sufficient and proper showing in support of the relief
> granted by presenting a *prima facie* case of securities laws violations by the
> Defendants Earl D. Miller, 5 Star Commercial, LLC and 5 Star Capital Fund,
> LLC.  (Ex. E, TRO Order ¶ B); and
>
> good cause to believe that, ***unless restrained and enjoined by Order of this
> Court, Defendants Earl D. Miller, 5 Star Commercial, LLC and 5 Star Capital
> Fund, LLC may continue to violate the federal securities laws and may
> dissipate, conceal or transfer assets which could be subject to an order of
> disgorgement*** or civil penalties. (Ex. E, TRO Order ¶ C) (emphasis added).

---

[9] The TRO is attached hereto as **Exhibit E** and incorporated herein.

The TRO restrained Mr. Miller from soliciting new investors and imposed an asset freeze

to prevent Mr. Miller from further dissipating, concealing or transferring assets of the Debtors.

*Id.* Subsequently, the SEC and the defendants filed an agreed motion for a preliminary

injunction and asset freeze, which was entered by the court.[10]

### F.       The Metro Homes Litigation and Appointment of a Receiver

In 2014, 5 Star Investment Group, LLC ("5 Star IG") also began investing in projects in

the Portland, Oregon area. Most of the Portland operations involved Development Agreements

between 5 Star IG and Metro Homes Northwest, LLC ("Metro Homes"). Allegedly, most, if not

all, of the funds used to finance 5 Star IG's participation in the Development Agreements were

originally borrowed from investor-creditors by 5 Star IG's affiliate, 5 Star Portland Holdings,

LLC, which would then loan the funds to 5 Star IG.

Under the Development Agreements, Metro Homes purchased an existing home in the

Portland area, divided the lot into two or three parts, renovated the existing home, and built

homes on the subdivided parcels. Metro Homes would provide the funds for the initial

acquisition, and 5 Star IG would loan Metro Homes funds for construction expenses. The loans

to Metro Homes were to be secured by mortgages on the property for which the construction

funding was provided. Upon information and belief, 5 Star IG has second liens on many of the

relevant properties and first position liens on at least some of the properties.

In July 2015, 5 Star IG ceased making payments to Metro Homes. On September 4, 2015,

Metro Homes commenced an action captioned *Metro Homes Northwest, LLC v. 5 Star*

*Investment Group, LLC and 5 Star Portland Holdings, LLC* (the "Portland Action"),  in the

United States District Court for the District of Oregon, alleging breaches and anticipatory

repudiation of various Development Agreements.  On October 19, 2015, 5 Star IG and 5 Star

---

[10] The consent Preliminary Injunction is attached hereto as **Exhibit F** and incorporated herein.

Portland filed their answer and counterclaim alleging fraud in the inducement, fraudulent

misrepresentation, negligent misrepresentation, breach of contract, unjust enrichment, and breach

of fiduciary duty.

On November 4, 2015, Metro Homes filed an Emergency Motion for Order Appointing

Receiver, seeking the appointment of a receiver to manage and liquidate the parties' interests in

the properties subject to the Development Agreements. 5 Star IG and 5 Star Portland did not

oppose the motion, and on November 19, 2015, the Court entered an order (the "Receivership

Order") appointing Kenneth S. Eiler ("Receiver") "to exclusively manage, control, operate, sell,

and liquidate the interests of [Metro]" in certain specified properties.

The Oregon Court has issued an order permitting the Receiver to proceed with

prospective sales of certain Receivership properties.  However, because the automatic stay

prevents the Receiver from closing on sales of properties subject to the Receivership Order and

distributing proceeds of such sales, some of which proceeds would be property of 5 Star IG's and

5 Star Portland's estates, the Receiver filed a Motion for Relief from Stay on an expedited basis.

### G.    The Global Impact Engagement

In July of 2015, Mr. Miller engaged an entity known as Global Impact Companies, LLC

("Global Impact") to perform turnaround management services for the Debtors and, under a

separate engagement agreement, to perform asset recovery and collection services for both the

Debtors and Mr. Miller.[11]  Global Impact was to receive $300,000 in retainer fees, plus $35,000

monthly under the turnaround management engagement pre-petition and $100,000 in retainer

fees, plus an additional $35,000 monthly under the asset recovery engagement pre-petition. *See*

Exhibit G.  Despite requests for same, the U.S. Trustee has not received copies of curriculum

vitae for any of Global Impact's principals from the Debtors.  To date, the U.S. Trustee has been

---

[11] Copies of the Global Impact engagement agreements are attached hereto and incorporated herein as **Exhibit G.**

unable to find information showing that Global Impact has had any prior history of performing

successful turnarounds of troubled companies, in or out of bankruptcy, nor any information

indicating that Global Impact principal Adam LaFavre has any credentials or training as a

turnaround professional.  Additionally, despite the high retainers and monthly fees paid, after six

months of work by Global Impact, Debtors' counsel was only able to file petitions for the

Debtors, without any accompanying schedules or statements of financial affairs.  Further, the

U.S. Trustee has been unable to ascertain what, if anything, Global Impact has done to turn

around any of the Debtor entities during the six months of its prepetition engagement.  At most,

Global Impact hired an independent contractor to perform some accounting work for the

Debtors. Nevertheless, as set forth below, information supplied by Debtors' counsel to the U.S.

Trustee indicates that the Debtors have very little cash in their bank accounts and the rent

collection practices for the Northern Indiana investment properties are unknown.

### H.      Summary of Debtors' Business Operations and Current Status

Upon information and belief, and based upon information supplied by Debtors' counsel,

the following summarizes the current state of the Debtors' businesses and operations:

1.    **5 Star Investment Group, LLC, Case No. 16-30078-hcd**

> 5 Star IG has been primarily involved in the business of acquiring, rehabilitating,
> leasing, and selling distressed single family homes in Northern Indiana. 5 Star IG
> financed the acquisitions with loans from individuals, which were secured by
> mortgages on the property for which the financing was provided. After
> rehabilitation, properties were leased to tenants and 5 Star IG would assist the
> tenant in securing financing to purchase the property. While the property was
> leased, the rental income would be used for payment of interest on the note(s)
> payable to the investor-creditors, as well as ordinary costs associated with the
> property. Once the property was sold, the notes would be paid, and 5 Star IG
> would realize as profit any excess sale proceeds. As of the Petition Date, 5 Star IG
> owned 14 properties, all in Indiana, three of which were vacant.

> In many cases, 5 Star IG's acquisitions were financed with funds borrowed from
> individual investor-creditors by one of 5 Star IG's affiliates, resulting in a
> potential intercompany payable from 5 Star IG to the affiliate that borrowed the

funds from the investor-creditors. Although the debt might be secured by a mortgage on property owned by 5 Star IG, the affiliate providing the funds would remain obligated on the note payable to the investor-creditors.

5 Star IG experienced cash flow difficulties, allegedly associated with vacant properties. By mid-2015, 5 Star IG was unable to service the outstanding obligations to its investor-creditors.

As set forth above, 5 Star IG also contracted with Metro Homes in Oregon to loan money for the development and sale of residential homes.

5 Star IG's only ongoing operations consist of collecting rents on leased properties.

2.    **5 Star Portland Holdings, LLC ("5 Star Portland"), Case No. 16-30079-hcd.**

5 Star Portland's operations consisted solely of raising funds that were used to finance 5 Star IG's participation in the Development Agreements with Metro Homes. Its only assets are inter-company receivables. 5 Star Portland has no operations.

3.    **5 Star Investment Group V, LLC ("5 Star IG V"), Case No. 16-30080-hcd**

5 Star IG V's operations are similar to those of 5 Star IG, except that 5 Star IG V, LLC has no involvement in the business conducted in the Portland area. Many of 5 Star IG V's acquisitions were financed with funds borrowed from individual investor-creditors by one of 5 Star IG V's affiliates.

As of the Petition Date, 5 Star IG V owned 43 properties, ten of which were vacant. Its ongoing operations consist of collecting rents on leased properties.

4.    **5 Star Commercial, LLC ("5 Star Commercial"), Case No. 16-30081-hcd**

5 Star Commercial owns minority membership interests in eight limited liability companies that own and operate residential apartment buildings. 5 Star Commercial is a defendant in the SEC Enforcement Action and is subject to the TRO and the consent Preliminary Injunction. 5 Star Commercial has no ongoing operations, other than collecting distributions paid on account of its interests in the apartment complexes.

5.    **5 Star Investment Group VII ("5 Star IG VII"), LLC, Case No. 16-30082-hcd**

5 Star IG VII's operations consisted solely of raising funds that were used to finance the affiliated Debtors' acquisition of property in Indiana. Its only significant assets are inter-company loans receivable. 5 Star IG VII has no operations.

6.  **5 Star Holdings, LLC ("5 Star Holdings"), Case No. 16-30083-hcd**

    5 Star Holdings's operations consisted solely of raising funds that were used to finance affiliated Debtors' acquisition of property in Indiana. Its only significant assets are inter-company loans receivable. 5 Star Holdings has no operations.

7.  **5 Star Investment Group III, LLC ("5 Star IG III"), Case No. 16-30084-hcd**

    5 Star IG III's operations are substantially similar to those of 5 Star IG, except that 5 Star IG III has no involvement in the business conducted in the Portland area. As with 5 Star IG, many of 5 Star IG III's acquisitions were financed with funds borrowed from individual investor-creditors by one of 5 Star IG III's affiliates.

    As of the Petition Date, 5 Star IG III owned seven properties, two of which were vacant. Its ongoing operations consist of collecting rents on leased properties.

8.  **5 Star Indiana Holdings, LLC, Case No. 16-30085-hcd**

    5 Star Indiana Holdings raised funds that were used to finance affiliated Debtors' acquisition of property in Indiana. Its only significant assets are inter-company loans receivable. 5 Star Indiana Holdings has no operations.

9.  **5 Star Investment Group II, LLC ("5 Star IG II"), Case No. 16-30086-hcd**

    5 Star IG II's operations are similar to those of 5 Star IG, except that 5 Star IG II has no involvement in the business conducted in the Portland area. Many of 5 Start IG II's acquisitions were financed with funds borrowed from individual investor-creditors by one of 5 Star IG II's affiliates.

    As of the Petition Date, 5 Star IG II owned ten properties, two of which were vacant. Its ongoing operations consist of collecting rents on leased properties.

10. **5 Star Investment Group IV, LLC ("5 Star IG IV"), Case No. 16-30087-hcd**

    5 Star IG IV's operations have been substantially similar to those of 5 Star IG, except that 5 Star IG IV has no involvement in the business conducted in the Portland area. Many of 5 Star IG IV's acquisitions were financed with funds borrowed from individual investor-creditors by one of 5 Star IG IV's affiliates.

    As of the Petition Date, 5 Star IG IV owned four properties, all of which were occupied. Its ongoing operations consist of collecting rents on leased properties.

11. **5 Star Capital Fund, LLC ("5 Star Capital"), Case No. 16-30088-hcd**

    As described above, 5 Star Capital provided funds to several business ventures (the Toth/Foraker entities), with most of the funds provided to an as-yet-unformed business that was to manufacture and distribute a "green product" washing

machine under the brand name "Ecowasher." The business that was to produce the Ecowasher was never formed, and none of the other similar investments have generated any revenue. The Debtors may have claims against several of the businesses and individuals who received the funds. 5 Star Capital has no ongoing operations.

Upon information and belief, and based upon statements supplied to the U.S. Trustee by Debtors' counsel, as of the Petition Date, the Debtors' current bank accounts have funds as follows:

| Debtor | Bank Account Balance (1/25/2016) |
|---|---|
| 5 Star Investment Group, LLC | $5,343.20 |
| 5 Star Investment Group, LLC | $732.72 |
| 5 Star Portland Holdings, LLC | $207.21 |
| 5 Star Investment Group V, LLC | $115.00 |
| 5 Star Commercial, LLC | $11,605.69 |
| 5 Star Investment Group VII, LLC | $0.00 |
| 5 Star Holdings, LLC | $0.00 |
| 5 Star Investment Group III, LLC | $125.00 |
| 5 Star Indiana Holdings, LLC | $0.00 |
| 5 Star Investment Group II, LLC | $125.06 |
| 5 Star Investment Group IV, LLC | $125.00 |
| 5 Star Capital Fund, LLC | $5,086.70 |

Accordingly, the Debtors' total cash on hand for all eleven Debtors as of the Petition Date apparently totals less than $24,000. In addition, as of the Petition Date, upon information and belief and according to the Debtors' Counsel, the Debtors' insurance has lapsed.

**REQUEST FOR EMERGENCY RELIEF**

Due to the absence of effective management, the U.S. Trustee requests that the Court consider this Motion on an expedited basis, including holding an expedited hearing, and enter an order directing the immediate appointment of a trustee in the above-captioned Debtors' cases or, in the alternative, convert the Debtors' cases to Chapter 7. The Debtors have failed to file many basic first day, administrative Chapter 11 motions. Alarmingly, although the Debtors' assets include seventy residential rental units, the Debtors had no insurance on the Petition Date. The

13

Debtors have not filed motions under § 366 to ensure the continued provision of utilities service. Moreover, the Receiver in the Oregon Debtors' cases has filed a motion seeking relief from stay as well as a motion pursuant to § 543 requesting an order permitting the Receiver a second position lien on funds from such sales.  A trustee is needed immediately to advocate on behalf of the Debtors, their estates and their creditors.  Because many of the Debtors' creditors are Amish, lack business sophistication, and have religious restrictions on their travel and news access, an independent trustee is particularly important to protect such creditors from further harm.

## ARGUMENT

### A.  Cause Exists to Appoint a Trustee Under § 1104(a)(1).

The law is well settled that if a moving party has proven any of the incidents of "cause" under § 1104(a)(1),[12] the court *must* order the appointment of a trustee.  *Official Committee of Asbestos Claimants v. G-I Holdings, Inc.*, 385 B.R. 313, 318 (3d Cir. 2004).  Here, a multitude of reasons militate the appointment of a trustee under § 1104(a)(1).  First, the SEC has alleged that Mr. Miller engaged in self-dealing, allegedly transferring $365,435.00 from the Debtors to himself between July 2014, and July 2015.  *See* Ex. B.  The SEC has further alleged that Mr. Miller transferred $645,816.00 to Mr. Gingerich, *see* Ex. C.   Such transfers may be avoidable under the Bankruptcy Code and/or state law.  As Mr. Miller is unlikely to authorize an avoidance action against himself or Mr. Gingerich, and as he has not returned the transferred money to the Debtors, he has a conflict of interest that interferes with his ability to fulfill his fiduciary duties to

---

[12] 11 U.S. C. § 1104(a)(1) provides:

> At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States Trustee, and after notice and a hearing, the court shall order the appointment of a trustee-
>
> > (1)      for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; …

the Debtors.  This alleged self-dealing by management, waste or squandering of corporate assets,

(such as the failed "green products" investments) and the existence of pre-petition voidable

transfers provide cause for the appointment of a trustee.  *See In re Intercat, Inc.* 247 B.R. 911,

921 (Bankr. S.D. Ga. 2000); *In re SunCruz Casinos, LLC*, 298 B.R. 821, 828-830 (Bankr.

S.D.Fla. 2003).

Second, based on the entry of the TRO and preliminary injunction against Mr. Miller,

there is credible evidence supporting the SEC's claims that Mr. Miller engaged in securities law

violations, to the injury of investors and creditors of the Debtors.  In the TRO, the court found:

> That the SEC has made a sufficient and proper showing in support of the relief
> granted by presenting a *prima facie* case of securities laws violations by the
> Defendants Earl D. Miller, 5 Star Commercial, LLC and 5 Star Capital Fund,
> LLC.  Ex. E, TRO Order ¶ B.

Moreover, the court found:

> . . . good cause to believe that, unless restrained and enjoined by Order of this
> Court, Defendants Earl D. Miller, 5 Star Commercial, LLC and 5 Star Capital
> Fund, LLC *may continue to violate the federal securities laws and may dissipate,*
> *conceal or transfer assets which could be subject to an order of disgorgement* or
> civil penalties. Ex. E, TRO Order ¶ C.

Accordingly, the Northern District of Indiana District Court concluded there is good cause to

believe not only that Mr. Miller engaged in securities law violations and self-dealing, but also

that his prepetition conduct presents a risk of continued dissipation, concealment or transfers of

estate assets.

Third, the Debtors' insurance coverage has lapsed, posing a risk to estate assets and

further evidencing gross mismanagement.  As a result of the foregoing, appointment of a Chapter

11 trustee is warranted in these cases.  *See In re Intercat, Inc.* 247 B.R. at 921; *In re SunCruz*

*Casinos, LLC,* 298 B.R. at 828-830.

**B. Pursuant To § 1104(a)(2), It Is In The Best Interests Of The Debtors, Creditors And All Parties In Interest To Appoint A Trustee.**

If insufficient cause exists to appoint a trustee under § 1104(a)(1), or if the movant is unable to prove cause exists, the Court  may still appoint a trustee pursuant to § 1104(a)(2)[13] if the appointment is in the best interests of the creditors, certain equity security holders, or the estate.   Section 1104(a)(2) provides the Court with "particularly wide discretion" to appoint a trustee even absent wrongdoing or mismanagement.  *In re Bellevue Place Assocs.,* 171 B.R. 615, 623 (N.D. Ill. 1994).

The Debtors lack an appropriate fiduciary to manage the Debtors' affairs.  The sole owner of the Debtors, Mr. Miller, is a defendant in the SEC Enforcement Action, *see* Ex. E, has previously asserted his Fifth Amendment privilege in response to the SEC's investigation, *see* SEC Trustee Motion at 6, and, upon information and belief, may have left Indiana.

As outlined above, the Debtors' pre-petition turnaround management company, Global Impact, has ties to Mr. Miller that preclude it from making independent decisions that are in the estates' best interests.  Despite having purportedly managed the Debtors for nearly six months, it is not clear what value, if any, Global Impact provided to the Debtors.  Investors and creditors have gone unpaid, while Global Impact received hundreds of thousands of dollars in the several months prepetition, leaving the Debtors with only a few thousand dollars in their bank accounts on the Petition Date and uninsured properties.

Given the lack of current trustworthy, unconflicted, or competent management, as well as the lapsed insurance in these cases, appointment of a trustee is in the best interests of the Debtors, creditors, and all parties in interest under § 1104(a)(2). Alternatively,  each of the

---

[13] 11 U.S. C. § 1104(a)(1) provides that a trustee may be appointed if "such appointment is in the interest of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor..."

Debtors' cases should be converted to a case under Chapter 7 pursuant to § 1112 for cause,

including gross mismanagement under § 1112(b)(4)(B) and/or the failure to maintain appropriate

insurance that poses a risk to the estate or to the public under § 1112(b)(4)(C).  The Debtors

require an independent trustee (whether Chapter 11 or 7) to untangle the Debtors' affairs,

advocate on behalf of investors and creditors, investigate the alleged prepetition wrongdoing,

bring appropriate litigation to recover assets for distribution, protect the estate assets, and

determine whether reorganization or liquidation may be appropriate in these cases.

WHEREFORE, the U.S. Trustee requests an order (a) authorizing the United States

Trustee to appoint a Chapter 11 trustee for each of the above-captioned  Debtors pursuant to

§ 1104, or, in the alternative, (b) converting the Debtors' cases to Chapter 7 pursuant to

§ 1112(b), (c) granting the U.S. Trustee's request for expedited relief and setting an expedited

hearing on the U.S. Trustee's Motion filed in the above-captioned cases for each of the Debtors,

and (d) granting such other relief as is just under the circumstances.

> Respectfully submitted,
>
> NANCY J. GARGULA
> United States Trustee
> Region 10, Judicial Districts of
> Northern and Southern Indiana and
> Central and Southern Illinois
>
> By:    /s/ Susan Jaffe Roberts
> Susan Jaffe Roberts, Assistant U.S. Trustee
>
> By:    /s/ Ellen L. Triebold
> Ellen L. Triebold, Trial Attorney
>
> Office of the United States Trustee
> 100 East Wayne Street, Suite 555
> South Bend, IN 46601
> (574) 236-8105

17

CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing motion has been either mailed by first class mail, postage prepaid, or transmitted by CM/ECF to the following parties this 9th day of February, 2016:


Thomas G. Wallrich, twallrich@cozen.com
Katherine C. O'Malley, komalley@cozen.com
Angela D. Dodd, dodda@sec.gov
Jaclyn Janssen, janssenj@sec.gov
Mark J. Adey, madey@btlaw.com
Harley K. Means, hkm@kgrlaw.com




By: /s/ Ellen L. Triebold


Office of the United States Trustee
100 East Wayne Street, Suite 555
South Bend, IN 46601
Tel: (574) 236-8105, ext. 118