IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

IN RE:                                          CHAPTER 11

                                                CASE NO.

| | |
|---|---|
| 5 Star Investment Group, LLC, | 16-30078 |
| 5 Star Portland Holdings, LLC, | 16-30079 |
| 5 Star Investment Group V, LLC, | 16-30080 |
| 5 Star Commercial, LLC, | 16-30081 |
| 5 Star Investment Group VII, LLC, | 16-30082 |
| 5 Star Holdings, LLC, | 16-30083 |
| 5 Star Investment Group III, LLC, | 16-30084 |
| 5 Star Indiana Holdings, LLC, | 16-30085 |
| 5 Star Investment Group II, LLC, | 16-30086 |
| 5 Star Investment Group IV, LLC, | 16-30087 |
| 5 Star Capital Fund, LLC, | 16-30088 |

    DEBTORS.

_____/

RESPONSE OF THE SECURITIES AND EXCHANGE COMMISSION IN
SUPPORT OF UNITED STATES TRUSTEE'S EMERGENCY MOTION
FOR AN ORDER DIRECTING THE APPOINTMENT OF A TRUSTEE OR,
IN THE ALTERNATIVE, CONVERSION TO CHAPTER 7,
AND REQUEST FOR AN EXPEDITED HEARING ON THE MOTION

    The Securities and Exchange Commission ("SEC" or "Commission"), hereby files this Response in Support of the United States Trustee's ("UST") Emergency Motion for an Order Directing the Appointment of a Trustee or, in the Alternative, Conversion to Chapter 7, and Request for an Expedited Hearing on the Motion. The SEC wholeheartedly agrees with the UST that pressing circumstances compel the expedited

appointment of a Chapter 11 Trustee, or, in the alternative, conversion to Chapter 7. First, there is persuasive evidence of fraud, dishonesty and gross mismanagement of the affairs of the Debtors. Second, the Debtors have no acting management to supervise or administer their affairs. These failings stem from the activities of the Debtors' sole owner and managing member, Earl D. Miller ("Miller") who has abdicated his responsibilities as a fiduciary to perpetrate a fraudulent scheme. The SEC joins with the UST in seeking a fiduciary to manage the Debtors.[1]

## INTRODUCTION

The appointment of a Chapter 11 trustee is required under the standards set forth in Section 1104(a) of the Bankruptcy Code. There is compelling evidence of fraud, dishonesty and gross mismanagement of the affairs of the Debtors. The Debtors are currently controlled by Earl Miller who is the subject of a SEC enforcement action, *SEC v. Earl D. Miller, 5 Star Commercial, LLC, and 5 Star Capital Fund, LLC,* Civil Action No. 15-cv-00519 (November 5, 2015) (N.D. Ind.), alleging that he made material misrepresentations to investors and perpetrated a fraudulent scheme in raising investor funds for certain 5 Star entities. The SEC has alleged that two of those entities were used as vehicles for Miller's fraud. All of the Debtors are single member limited liability companies, with Earl Miller being the sole member of each. Miller is also the sole

---

[1] The Commission filed its own motion in these cases on January 29, 2016 requesting that the Court appoint a Chapter 11 Trustee under Section 1104 of the Bankruptcy Code or to convert the case to Chapter 7. It makes sense for the SEC to join in the UST's request for expedited relief on the same grounds. The Commission's Response is substantially similar to its Motion filed on January 29, 2016.

managing member for all of the 5 Star Debtors. Given Miller's control, there is a significant risk that all of the Debtors may have been involved or that their assets were hopelessly commingled. Miller's actions demonstrate that he is unfit to manage any of the entities and a Chapter 11 trustee must be appointed.

Moreover, there is no management currently acting for the Debtors, and swift action is necessary to preserve assets, protect the rights of investors and creditors and operate the businesses. Miller's whereabouts are unknown to the SEC. The Commission understands that there is only one employee remaining at the companies. The Commission has no idea whether the real estate assets are being maintained or how rents are collected or used. The SEC was alarmed to hear that the companies' insurance lapsed upon the petition date. The few individuals and professionals acting on behalf of the Debtors, including the consulting company retained pre-petiton, may have preexisting relationships with Miller. The Commission supports the UST's request for prompt appointment of a Chapter 11 trustee in order to ensure that assets are preserved and a competent and disinterested fiduciary is in charge of the estates.

## FACTUAL BACKGROUND

A. **Miller Used at Least Two of the 5 Star Entities as Instruments of his Fraud**.

Miller has been in the business of real estate development and sales since 2006. Starting in 2008 – despite having no experience in managing private investment funds – Miller began recruiting investors for a number of private investment entities that he

created. Those private investment entities, in turn, were supposed to generate a return by investing in the building and/or rehabilitating of residential real estate ("5 Star Entities").

In approximately 2012, Miller began raising money for a new private investment fund – 5 Star Commercial. To recruit investors, Miller, on behalf of 5 Star Commercial, made oral representations to investors and also gave prospective investors written marketing materials relating to the company, including a Private Placement Memorandum ("PPM").

As with his other real estate entities, 5 Star Commercial was supposed to invest investors' money in various real estate projects. Miller gained sole control of 5 Star Commercial in July 2014, and continued to solicit investor funds. In February 2015, Miller branched out and created 5 Star Capital which was, according to the PPM was supposed to invest in "green energy saving product (sic) that save the average American consumer hundreds of dollars each year."

Miller encouraged people who trusted him to invest their money with 5 Star Commercial and 5 Star Capital. Many of Miller's investors are financial novices. Miller has been very effective at gaining the trust of – and recruiting investors from – the local Amish community. He has advertised his investment services in local Amish newspapers, has touted his Amish heritage, and has arranged community meetings with local Amish families to discuss his investment "opportunities."

Miller has been enormously successful in exploiting this investor network. From at least July 29, 2014 to date, Miller raised at least $3.9 million from at least 70 investors

in 5 Star Capital and 5 Star Commercial. Miller convinced some of his victims to invest their retirement funds or a majority of their life savings with those entities.

In exchange for their investments, Miller, 5 Star Commercial and 5 Star Capital gave investors promissory notes with a fixed-rate of return ranging from 8% to 12% per year and paid monthly – far in excess of then-prevailing rates for bank deposits, CDs and other fixed-return investment vehicles.

But, in raising those funds, Miller repeatedly lied to prospective investors. Miller falsely told 5 Star Commercial investors that he would not be paid for managing the fund when, in reality, he misappropriated over $1 million from 5 Star Commercial investors for his personal use and to pay off a former business partner. Further, Miller and 5 Star Commercial informed investors that their money would be invested exclusively in real estate when, in reality, he invested and/or transferred over $391,000 of 5 Star Commercial's funds into highly speculative, fledgling companies that purportedly made and marketed "green products."

Miller similarly defrauded prospective investors in 5 Star Capital – the fund that actually was supposed to invest in the purported "green" companies. Miller (a) told investors that 5 Star Capital owned patents on many of the "green" products, (b) assured investors that he would "manage risks" on behalf of 5 Star Capital, and (c) orally represented to at least one investor in 5 Star Capital that their money would be invested in real estate (just like Miller's other entities).

None of those representations was true. In reality, 5 Star Capital owned no "green product" patents, Miller performed virtually no due diligence into the purported "green"

companies before handing them the lion's share of 5 Star Capital's assets, and – contrary to his oral representations to certain investors – the overwhelming majority of 5 Star Capital's assets were not invested in real estate.

The vast majority of 5 Star Capital's "investments" in the "green product" companies failed almost as soon as they were made; the rest have not generated any return to date. Of the $1.15 million that 5 Star Commercial and 5 Star Capital transferred/invested, most of the funds were in the form of "loans" that were supposed to generate monthly interest payments. Between March 2015 and July 2015, those payments were only $3,500 per month, and then the payments stopped entirely. All of those loans are now in default. Even when payments were being made, the investments never generated income sufficient to meet 5 Star Capital's interest obligations after March 2015.

In July 2015, in the wake of the failure of 5 Star Commercial and 5 Star Capital's purported "green product" investments in "green products, 5 Star Capital stopped making interest payments that were required under the terms of the investors' promissory notes.

5 Star Commercial and 5 Star Capital benefited from defrauding their investors. By recruiting investors through fraudulent offering materials, they raised $2.28 million and $1.62 million respectively between July 29, 2014 and the present. In addition, Miller personally benefitted from defrauding investors in 5 Star Commercial. Specifically, from July 29, 2014 to July 1, 2015, Miller has taken at least $1 million from 5 Star Commercial and used it to pay himself and to pay off a personal debt to a former business partner.

### B. Miller Invoked the Fifth Amendment in Response to Questions Posed by the SEC.

On September 21, 2015, as part of its investigation into the securities law violations, the SEC issued an investigative subpoena to Miller requiring him to appear and provide testimony under oath to the SEC regarding the funds he raised from investors for, among other entities, 5 Star Capital and 5 Star Commercial.

On October 23, 2015, rather than appear for testimony, Miller submitted a declaration to the SEC, confirming that he was asserting his Fifth Amendment right against self-incrimination and that, on that basis, he would refuse to answer any of the SEC's questions regarding, among other topics: (a) 5 Star Capital; (b) 5 Star Commercial; (c) any representations Defendants made to investors and prospective investors; (d) Miller's awareness of any fraudulent scheme related to 5 Star Capital and 5 Star Commercial; (e) Miller's role in the creation of the PPMs, (f) Miller's receipt, misappropriation or misuse of investor assets, (g) his financial condition, (h) any underlying transactions he effected on behalf of his entities, and (i) his relationships with – and communications with – investors.

### C. The SEC Filed an Action to Put a Halt to the Fraud.

In its Complaint, the Commission has alleged that by making material misrepresentations and omissions to their investors, Miller, 5 Star Commercial and 5 Star Capital have committed securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5] and Section 17(a) of the Securities Act of 1933 (the

"Securities Act") [15 U.S.C. § 77q(a)].[2]  Simultaneously with filing the Complaint, the Commission filed an emergency motion seeking a temporary restraining order, asset freeze and other emergency relief against Miller, 5 Star Commercial and 5 Star Capital due to concerns that the Defendants would continue to raise funds and/or would dissipate assets.  The Court granted the Temporary Restraining Order ("TRO") and imposed an asset freeze on Miller, 5 Star Commercial and 5 Star Capital.  The District Court found that "the SEC has shown a sufficient likelihood of success on the merits of establishing that the Defendants have violated and may continue to violate various anti-fraud provisions of federal securities laws, including that they made material misrepresentations to investors."  TRO at 5.  Further, he found that there was reasonable likelihood that the Defendants will engage in illegal conduct again citing their refusal to accept responsibility for their conduct or give assurance that they would not engage in similar conduct in the future.  TRO at 7.  The court highlighted the fact that the Defendants continued to engage in illegal conduct even after investigation by and entering a consent decree with Indiana state securities regulators.  TRO at 9.  The Commission and the Defendants subsequently filed an agreed motion for a preliminary injunction and an asset freeze, which was entered by the Court.

    **D.**    **5 Star's Management was Marked by Dishonesty, Mismanagement and Fraud.**

---

[2] The SEC lodged with this Court copies of the pleadings, exhibits, temporary restraining order and preliminary injunction issued in the SEC Enforcement Action.  *See* Docket No. 9 (*Notice of Complaint And Orders in the U.S. District Court for the N.D. of Indiana Filed by Angela Dodd United States Securities And Exchange Commission*) in Case No. 16-30081. The SEC requests the Court to take judicial notice of the pleadings and exhibits filed therein. To avoid excess paper and filings, the Complaint, exhibits and Orders are not attached to this Response.

Miller's actions reveal a pattern of gross mismanagement, dishonesty, neglect and fraud that demonstrates that current management of the Debtors is unfit to serve in any function. Miller used his control over bank accounts related to the 5 Star Commercial and 5 Star Capital to (a) misappropriate investor funds, (b) pay Miller compensation, (c) transfer money to highly suspect investment "opportunities," and (d) make interest payments to investors even when the underlying investments were not generating sufficient revenue (setting the stage for potential Ponzi-type payments). The potential for further harm to defrauded investors is a serious concern with Miller as current management.

### E. The Debtor Lacks Acting Management.

It has become abundantly clear that there is no one at the helm of the Debtor companies. Debtors' counsel has disclosed that Miller is not currently working with the Debtors and there is only one employee in the Debtors' offices. According to bank records received by the SEC, it appears that at least five of the Debtors (5 Star Investment Group II, LLC; 5 Star Investment Group III, LLC; 5 Star Investment Group IV, LLC; 5 Star Investment Group V, LLC; and, 5 Star Investment Main) collected rents as of August 2015. The Commission believes that these Debtors continue to collect rent. The Commission has no knowledge of how they are being preserved or spent. Further, the SEC is concerned about the maintenance of the real estate assets, including whether utilities and other necessary services are up to date. Debtors' counsel has revealed that as of the petition date, the Debtors' insurance had lapsed.

The Commission has no knowledge as to Miller's whereabouts. He has not made himself available to the SEC, investors or tenants. The SEC understands that investors and tenants have been calling and appearing at the 5 Star offices never to have their calls returned or questions answered. This has a created a situation ripe for conjecture that is negatively impacting the investors in the community.

Debtors' counsel has proposed that Global Impact Companies, LLC ("Global Impact") be retained to operate the Debtors and formulate and file the schedules. The Commission has serious concerns regarding Global Impact's participation in these cases. It does not appear that they are properly certified or regularly engage in the business of providing reorganization or accounting services. But, most troubling, is that Global Impact has a preexisting relationship with Earl Miller. Under the Asset Recovery and Collection Consulting Agreement dated August 15, 2015, Global Impact entered the agreement with the 5 Star entities and Miller, individually. Thus, Global Impact has a conflict that would prevent their retention in the bankruptcy case and underscores that they are not the appropriate party to be operating the Debtors' affairs and representing the rights of creditors and investors.

**F.     No Management is Available to Respond to Ancillary Litigation that Impacts the Claims of the Debtors and Investors.**

One of the Debtors, 5 Star Investment Group, LLC, ("5 Star Investment") is a defendant in an ongoing action in the United States District Court for the District of Oregon. *See Metro Homes Northwest, LLC, v. 5 Star Investment Group, LLC*, No. 3:15-cv-01680-PK (D. Ore. 2015). Metro Homes Northwest, LLC ("Metro Homes"), a former business partner of various 5 Star entities, filed suit against 5 Star Investment for breach

of contract in September of 2015. Metro Homes' complaint alleges that 5 Star Investment and Metro Homes executed a number of development agreements whereby Metro Homes would build and remodel single family homes in the Portland, Oregon area and 5 Star would provide funding for the projects and hold a second lien. In November 2015, Metro Homes succeeded in appointing a receiver to effectuate the sales of a number of these single family homes because representatives of 5 Star were not "able or willing to take any action with regard to 5 Star Entities' interests in the properties." *See* Decl. of K. Ketterling in Supp. of Pl.'s Emergency Mot. for Order Appointing Receiver ¶4.

In the past few months, the receiver has sought to sell a number of these properties and solicited input from 5 Star Investment regarding whether the receiver's calculation of the sale proceeds due to 5 Star Investment is accurate and fair. The receiver also has requested that 5 Star comment on the receiver's proposed response to an arbitration filed by a buyer of one of these properties. The Commission's understanding from the receiver is that it has been difficult to obtain clear, timely guidance from 5 Star to protect the value of the properties and avoid additional expense. Also, no one at 5 Star appears to be tasked with confirming that the receiver's proposals adequately reflect the extent of 5 Star's financial interest and that investors are treated fairly in the course of any sales. To the contrary, the SEC – <u>not</u> 5 Star – has had to take the initiative in pointing out to the Receiver several instances where the interests of 5 Star investors may be adversely affected by the receiver's proposals. A number of these properties are only partially completed. Thus, there is an ongoing and pressing need for a Chapter 11

Trustee to participate in the discussions regarding the fate of these properties and claims of the investors and Debtors to the proceeds.

### THE SEC SUPPORTS THE UST'S REQUEST FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE

Section 1104(a) of the Bankruptcy Code contains three independent grounds for the appointment of a Chapter 11 trustee. First, the court shall appoint a trustee for cause, including (but not limited to) fraud, dishonesty, incompetence or gross mismanagement by the debtor. *See* 11 U.S.C. § 1104(a)(1). Second, a trustee is required if the appointment would be in the interests of creditors, equity holders and other interests of the estate. *See* 11 U.S.C. § 1104(a)(2). Finally, a trustee should be appointed if grounds exist to convert or dismiss the case under Section 1112 of the Bankruptcy Code, but the bankruptcy court determines that appointing a trustee would be in the best interests of the creditors and the estate. *See* 11 U.S.C. § 1104(a)(3). The Commission believes that, under the circumstances of this case, a Chapter 11 trustee is warranted under *each* of these three provisions – any of which would be sufficient, by itself, to warrant a trustee.

    **A.**    **Cause Exists to Appoint a Chapter 11 Trustee Based on the Fraudulent Scheme and Mismanagement of the Debtors.**

Section 1104(a)(1) of the Bankruptcy Code requires the appointment of a Chapter 11 trustee, for cause. Cause has been established in these cases by the fraudulent and dishonest acts committed by the principals and officers of the Debtors as detailed in the SEC's District Court action. Once the court finds that cause exists under Section 1104(a)(1), the appointment of a trustee becomes mandatory; there is no discretion. *In re*

*Cajun Electric Power Coop, Inc.,* 191 B.R. 659, 661 (Bankr. M.D. La. 1995), *aff'd*, 74 F.3d 599 (5th Cir. 1996). *See also In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989)("11 U.S.C. § 1104(a) mandates appointment of a trustee when the bankruptcy court finds cause").

Cause includes, but is not limited to, fraud, dishonesty, incompetence or gross mismanagement and courts may also consider "whether: (1) the alleged misconduct was material; (2) the debtor treated insiders and affiliated entities better or worse than other creditors or customers; (3) the debtor made pre-petition voidable preferences or fraudulent transfers; (4) the debtor was unwilling or unable to pursue causes of action belonging to the estate; (5) conflicts of interest on the part of management interfered with its ability to fulfill its fiduciary duties to the debtor; and (6) management engaged in self-dealing or squandering of corporate assets." *In re LHC, LLC*, 497 B.R. 281, 292 (Bankr. N.D. Ill. 2013) (*citing In re Intercat, Inc.*, 247 B.R. 911, 921 (Bankr. S.D. Ga. 2000)).

Here, the Commission agrees with the UST that cause exists for the appointment of a Chapter 11 trustee under Section 1104(a)(1). This case is replete with specific allegations of fraud, dishonesty, and gross mismanagement by Miller. It is clear that he has "played fast and loose" with documents, property and money. *In re Klein*, 79 B.R. 769, 774 (N.D. Ill. 1987). The facts of *Klein* are similar to those at hand where there was a consistent pattern of misrepresentations, omissions, fraud and dishonesty by the debtor that amply supported the appointment of a Chapter 11 trustee. *Id*. at 775. An individual with Miller's track record of fraudulent and dishonest actions should not be in a fiduciary position charged with protecting the economic interests of others.

### B.  Appointing a Chapter 11 Trustee is in the Best Interests of the Debtors' Creditors.

Even if cause does not exist to appoint a trustee under Section 1104(a)(1), the Court possesses broad discretion to appoint a trustee "if such appointment is in the interests of creditors, any equity security holders and other interests of the estate." *See* 11 U.S.C. § 1104(a)(2).  When analyzing whether a trustee is in the creditors' best interests, the court should consider both the protections that will be afforded by the appointment of a trustee and the relative cost that is associated with the appointment. *See Cajun*, 191 B.R. 659, 661.  But when the need for a trustee becomes unavoidable to protect parties in interest, then the cost/benefit factor carries little weight, since the goal of protecting creditor interests is paramount to the goal of minimizing costs to the estate.  *Id.* ("If the appointment of a trustee becomes unavoidable in the protection of parties in interest, the cost/protection factor must necessarily supersede a cost/benefit factor, even to the extent of a depletion of the estate.") (citations and internal quotations omitted).  In this case, the Commission agrees with the UST that a consideration of the creditors and investor interests overwhelmingly supports appointing a Chapter 11 trustee.

The court must examine a debtor's present and past conduct to determine its management competency as well as whether the debtor has undertaken acts that are "in wanton and reckless disregard of the financial reality of the business and its creditors." *In re PMH Corp.,* 116 B.R. 644, 646-47 (Bankr. N.D. Ind. 1989)(*quoting, In re La Sherene, Inc.,* 3 B.R. 169, 175-76 (Bankr. N.D. Ga. 1980)*).*  That examination is critical in this case where management has demonstrated a history of dishonesty, self-dealing and neglect.

14

### C. Grounds Exist to Convert or Dismiss this Case Under Section 1112 Of The Bankruptcy Code.

Section 1104(a)(3) provides that if grounds exist under Section 1112 to convert or dismiss a Chapter 11 case, but the court determines that the appointment of a trustee is in the best interests of the creditors and the estate, then the court shall order the appointment of a trustee. *See* 11 U.S.C. § 1104(a)(3). In this case, the SEC agrees with the UST that cause for dismissal or conversion under Section 1112 exists because, among other grounds, the estate has been grossly mismanaged. *See* 11 U.S.C. § 1112(b)(4)(A) and (B). In the event the Court determines that cause exists under Section 1112, but that the creditors are not best served by a Chapter 11 trustee, then in the alternative, the Commission supports the UST's request that this case be converted to a case under Chapter 7.

Cause to convert or dismiss under Section 1112 also exists because of the Debtors' gross mismanagement of the estate. *See* 11 U.S.C. § 1112(b)(4)(B). As explained above, the Debtors' sole remaining manager has a history of fraud and dishonesty. Moreover, the creditors and investors have lost confidence in existing management and need the appointment of a third party fiduciary

The United States Securities and Exchange Commission supports the UST's Motion for expedited appointment of a Chapter 11 trustee in these cases or converting them to cases under Chapter 7 of the Bankruptcy Code.

Dated: Chicago, Illinois
       February 10, 2016

/s/ Angela D. Dodd
Attorney for the
Securities and Exchange Commission
175 West Jackson Blvd., Suite 900
Chicago, Illinois 60604
Telephone: (312) 353-7400
dodda@sec.gov

**CERTIFICATE OF SERVICE**

I, Angela D. Dodd, do hereby certify that a copy of the foregoing was served on all parties that receive electronic notification in these proceedings on February 10, 2016, including the parties below.

Susan Roberts, Susan.j.roberts@usdoj.gov

Ellen Triebold, Ellen.L.Triebold@usdoj.gov

Thomas G. Wallrich, twallrich@cozen.com

Katherine C. O'Malley, komalley@cozen.com

Mark J. Adey, madey@btlaw.com

Harley K. Means, hkm@kgrlaw.com


/s/ Angela D. Dodd_____
Attorney for the
Securities and Exchange Commission